Commonwealth *v.* Feldman, Appellant.

Argued October 8, 1968.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*William A. Atlee, Jr.,* with him *Bernard J. Myers, Jr.,* for appellant.

*Henry J. Rutherford,* Assistant District Attorney, with him *D. Richard Eckman,* Assistant District Attorney, and *Clarence C. Newcomer,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, November 12, 1968:

Appellant was found guilty of first degree murder after entering a plea of guilty to a charge of murder generally.   She now assigns as error the introduction at her degree of guilt hearing of two statements made by her to the police and district attorney shortly after

she was arrested for this crime.[1] The Commonwealth not only contends that these statements were admissible but also claims that the validity of these confessions is not properly before us because an appellant may *only* attack the validity of the plea and the lawfulness of the sentence once a guilty plea is entered. We shall discuss each of these contentions separately.

This Court has held that only the validity of the plea and the lawfulness of the sentence may be raised on appeal from the entry of a guilty plea. *Commonwealth v. Stokes,* 426 Pa. 265, 232 A. 2d 193 (1967). This is generally true of all guilty pleas *except* when, following the plea of guilty to murder generally, the defendant is convicted of murder in the first degree. In this situation a degree of guilt hearing will have been conducted in which the Commonwealth has had the burden of proving the elements of murder in the first degree beyond a reasonable doubt. It is only appropriate that the accused should have an opportunity to assign as errors for review objections he may have to this degree of guilt proceeding. See *Commonwealth v. Walters,* 431 Pa. 74, 77 n.1, 244 A. 2d 757, 759 n.1 (1968); *Commonwealth v. Stokes,* supra, 426 Pa. at 268 n.5, 232 A. 2d at 194 n.5. This is exactly the situation before us in this appeal: the appellant does not challenge the validity of her guilty plea; nor does she claim that the allegedly coerced confessions induced her guilty plea; her only assignment for error is the correctness of admitting into evidence in the degree of guilt hearing statements which she claims were procured by the district attorney without complying with the standards in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). The challenge to the statements

---

[1] These statements were the subject of a pretrial suppressing hearing in which the court dismissed appellant's motion to suppress.

is properly before us and we shall proceed to a determination on the merits.

In order to fully understand appellant's contention, the factual setting surrounding this statement is crucial. Officers of the local police force were summoned to the apartment of a neighbor of the appellant the day after the murder. The neighbor wanted to point out to them bloodstains which were apparently left on the door when appellant came upstairs the night before to use the neighbor's phone. As the two policemen were leaving the apartment building they met the appellant leaving the same building with another couple. When asked where she was going, she replied that she was taking a short vacation. The police officers then requested that she come down to the police station first so that the chief of police could talk to her. She was given a choice of coming down in her own car or joining the police; she chose the latter.

At the police station, Chief Bink questioned appellant for approximately one hour, until he acquired a feeling that she was involved in the case.[2] At this point the chief ceased all discussions with her that were in any way connected with the crime and she was then placed alone in the Borough Council Chamber for about one and one half hours. It was now about 9:00 P.M. and the district attorney finally had secured an operating tape recorder. She was first given the *Miranda* warnings and the officials then proceeded to elicit from appellant the statement under consideration.

Appellant advances several alternative grounds for her contention that the confession of March 30th should have been suppressed. First, she claims that

---

[2] None of the information which the chief obtained from appellant during this questioning was introduced at her degree of guilt hearing.

the original questioning by Chief Bink constitutes an "in-custody" interrogation, which, under *Miranda*, is illegal unless it is preceded by the appropriate warnings. To pass on this contention we must determine whether appellant, at the time she first arrived at the police station, was under the circumstances within the ambit of those intended to be protected by *Miranda*. *Miranda* defines "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." But our inquiry to ascertain those who are entitled to the *Miranda* warnings cannot stop with this definition alone. *Miranda* clearly refers us to the standard developed in *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964).[3] In *Escobedo*, the Supreme Court held that the defendant must be informed of certain rights when "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect." Id. at 490, 84 S. Ct. at 1765. From reading *Escobedo* and *Miranda* together it becomes clear that whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in *Miranda*. See *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765 (1967); *Commonwealth v. Barclay*, 212 Pa. Superior Ct. 25, 240 A. 2d 838 (1968) (HOFFMAN, J., dissenting); *Windsor v. United States*, 389 F. 2d 530, 534 (5th Cir. 1968); Graham, What is Custodial Interrogation?: California's An-

---

[3] *Miranda v. Arizona*, 384 U.S. at 444 n.4, 86 S. Ct. at 1612 n.4. After stating the definition of custodial interrogation quoted in the text, the *Miranda* Court drops a footnote: "This is what we meant in Escobedo when we spoke of an investigation which had focused on the accused."

ticipatory Application of Miranda v. Arizona, 14 U.C.L.A. L. Rev. 59, 114-117 (1966); cf. *Allen v. United States*, 390 F. 2d 476 (D.C. Cir. 1968).

In this case it is our view that the preliminary discussion between the police chief and appellant before 9:00 P.M. was proper. The court below concluded after the suppression hearing that "she voluntarily went to the Columbia Police station." This finding by the court refutes appellant's claim that she was in custody or "was deprived of her freedom of action in any significant way." The order of the hearing judge at the suppression hearing also contains the finding of fact that "Chief Bink stopped his conversation with defendant immediately upon learning of her relationship with the husband of the deceased woman and acquiring the feeling that she was involved in the case." Appellant's argument that the investigation had focused upon her at an earlier stage of the questioning must be rejected in light of this finding.[4] Since both of these findings of fact are amply supported in the record, the trial court's determination that the interrogation did not violate *Miranda* must be affirmed. Since we have concluded that the initial interrogation was not impermissible, we find no merit in appellant's further contentions: (1) that the statements given after the proper warnings were tainted by the earlier illegality; and (2) that her waiver of the rights of which she was informed in the *Miranda* warnings could not be found to be voluntary because of the earlier improper questioning. There were findings made by the

---

[4] It was the focusing of the investigation which renders appellant's reliance on *Commonwealth v. Sites*, 427 Pa. 486, 235 A. 2d 387 (1967), unpersuasive. In that case although the questioning took place in the defendant's own apartment, a less custodial atmosphere to be sure, the investigation definitely had rendered Sites much more of a suspect than Mrs. Feldman was when she arrived at the police station.

trial court that appellant was given a full and complete explanation of her constitutional rights and that she made an intelligent and voluntary waiver of her rights. Our review of the record satisfies us that these findings are fully supported.

Appellant argues that the statement she gave on April 1, 1968 also should have been suppressed because the warnings prior to that questioning were inadequate. According to the record the following colloquy took place at the outset: "Question [by Mr. Newcomer, the district attorney]: Now, Mrs. Feldman, I have advised you at least three previous times about your constitutional rights, have I not? Answer: Yes, you have. Question: I am going to do it one more time here so we can get it on the record. Now you realize, do you not that you have the right to remain silent, if you should talk, anything you say can be used against you at a future court proceeding, if you start to talk, you can stop at any time you like to, and you are entitled to be represented by an attorney. If you can't afford one, we will obtain one and furnish him to you free of charge, do you understand all of that? Answer: Yes, I do."

This quoted language virtually parallels the warnings required by *Miranda,* supra, 384 U.S. at 444, 86 S. Ct. at 1612. Therefore, we can see no reason for holding that this language was not entirely adequate. Nor are we persuaded by appellant's claim that even if the warnings were adequate, she did not make a voluntary waiver of the constitutional rights explained to her. The trial court conducted a long and detailed on the record inquiry and its determination that she voluntarily and intelligently made the second statement is indeed a fair and reasonable conclusion from the testimony. Since we have already determined that the statement of March 30th was proper, appellant's final

contention that the April 1st statement was the fruit of this earlier illegality is without merit.

The entire record in this case demonstrates a diligent and good faith effort on the part of the district attorney and the police to be ever mindful of appellant's rights. These rights were fully respected and made carefully available to the accused. Appellant has been unable to advance any substantial challenges to the conduct of the law enforcement officials or to the admissibility of either confession.

Judgment of sentence affirmed.

Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

Mr. Justice MUSMANNO did not participate in the decision of this case.