379 A.2d 1056

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Patrick McLAUGHLIN, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1975.

Decided Oct. 28, 1977.

**2.** Mr. Justice ROBERTS and Mr. Justice MANDERINO would also grant relief on this ground.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Carolyn Engel Temin, Asst. Dist. Atty., Philadelphia, for appellant.

John Rogers Carroll, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal by the Commonwealth[1] from an Order of the Superior Court affirming the suppression of a statement sought to be introduced by the Commonwealth at the trial of Patrick McLaughlin. Appellee, McLaughlin, was indicted on charges of having defrauded the City of Philadelphia of more than $20,000.00 by submitting to the City Comptroller's Office forged and fraudulent reimbursement vouchers.

The Commonwealth's evidence at the hearing adduced the following facts. Appellee was employed by contract with the City of Philadelphia as a Federal Coordinator in Washington, D. C. The annual contract provided for a maximum of $5,000.00 in expenses to be reimbursed, in addition to a salary. On April 23, 1971, McLaughlin received an adminis-

---

1. This Court's jurisdiction is based on the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. 211.204(a) (Supp. 1976–77).

trative subpoena from the Office of the City Comptroller requesting that he explain certain allegedly falsified expense vouchers. Accordingly, McLaughlin appeared on April 29, 1971, was sworn and then questioned by Mr. Gilbert Stein, First Deputy Comptroller. A statement by McLaughlin was recorded by a stenographer.

The City Comptroller thereafter sent to the Philadelphia District Attorney a report of his investigation and, after further investigation, prosecution of McLaughlin for multiple fraud offenses was initiated, and indictments were issued. Appellee filed a motion to suppress the statement taken on April 29, 1971, and, after a hearing held on August 1, 1972, the motion was granted by the Philadelphia County Court of Common Pleas. The statement was held to be inadmissible on the grounds that 1) appellee did not "knowingly and willingly waive his constitutional rights," and 2) the statement was the product of "official compulsion" and "psychological coercion."

The Commonwealth filed a timely appeal to the Superior Court which entered an order quashing the appeal on the ground that the Commonwealth failed to show that it would be substantially handicapped by the absence of the suppressed evidence. This Court subsequently reversed and remanded the case back to the Superior Court for a determination on the merits of the motion. *Commonwealth v. McLaughlin*, an order of May 8, 1974. On remand, the Superior Court affirmed the suppression order on the ground that appellee had not been given *Miranda*[2] warnings prior to questioning by the Comptroller's Office, but specifically did not reach the question whether appellee's statement was "voluntary". This appeal followed.

Appellant challenges the suppression of appellee's statement. First they contend the statement should not have been suppressed because *Miranda* warnings are not required before questioning pursuant to a non-custodial administrative investigation.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S.Const. amends. V, XIV; Pa.Const., art. I, Section 9 (1968).

The *Miranda* decision established that a person must be warned of his Fifth Amendment rights before any "custodial interrogation" takes place, and that "custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Pennsylvania "custodial interrogation" has been interpreted to mean either questioning . . . 'while in custody *or while the object of an investigation of which he is the focus*, . . .' *Commonwealth v. Feldman*, 432 Pa. 428, 432–33, 248 A.2d 1, 3 (1968)." *Commonwealth v. D'Nicuola*, 448 Pa. 54, 57, 292 A.2d 333, 335 (1972) (Emphasis added).[3] Subsequent to these Pennsylvania cases, the United States Supreme Court in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) explained that the *Miranda* Court "specifically defined 'focus,' [of an investigation] for its purposes, as 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his action in any significant way.' 384 U.S. at 444, 86 S.Ct. [1602] at 1612, 16 L.Ed.2d at 706 (emphasis supplied)." *Id.* at 347, 96 S.Ct. at 1616. *See also, Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). In the *Beckwith* case, the Supreme Court held that even though the focus of an investigation may have been on Beckwith at the time of the interview in that his tax liability was under scrutiny, he was not in the custodial situation described by the *Miranda* Court as the basis for its holding.

Although by our placing of "object of an investigation" in the disjunctive with the custodial requirement, it might appear as though the Pennsylvania interpretation of when *Miranda* warnings are required was broader than the United States Supreme Court's interpretation, an examination of the facts taken with the language of the Pennsylvania cases

**3.** *See also, Commonwealth v. Jefferson*, 423 Pa. 541, 226 A.2d 765 (1967) where this Court explained that "[c]ustodial interrogation is not limited to police station questioning or that occurring after a formal arrest." *Id.*, 423 Pa. at 546, 226 A.2d at 768.

indicates those cases may be interpreted as being harmonious with *Beckwith*. In each case recognizing the defendant as the focus of an investigation, there was also present a degree of "deprivation of liberty" which the *Beckwith* Court found *Miranda* to require. *Commonwealth v. D'Nicuola, supra; Commonwealth v. Simala*, 434 Pa. 219, 252 A.2d 575 (1969); *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A.2d 765 (1967). In *D'Nicuola*, the police found D'Nicuola in his car with a revolver which had recently been fired. He was in a comatose condition as a result of an apparent suicide attempt by drug overdose. The police questioned him in a hospital where he was a patient and they had reason to believe D'Nicuola was acquainted with a person who the police knew was missing. In that case this Court said:

> "Clearly, while appellant was confined to his hospital room his 'freedom of action' was restricted and this 'custody' coupled with the accusatory nature of the interview, mandates our conclusion that appellant's constitutional rights were violated when he was not given the *Miranda* warnings before the 'custodial interrogation' began." *Id.* 448 Pa. at 58, 292 A.2d at 336.

■ Similarly, in *Jefferson*, a statement was made by the accused in response to questions in a hospital by a policeman who knew there had been a stabbing in the hospital and that Jefferson, by her own admission, was the perpetrator. There we held that custodial interrogation is not limited to the police station so that Jefferson should have been given *Miranda* warnings before the questioning. *Jefferson* simply stands for the proposition that the critical factor is not the location of the interrogation but the degree of deprivation of liberty by police authorities. Likewise, in those cases where this Court declined to characterize the speaker as the focus of an investigation, there was no deprivation of liberty. *Commonwealth v. Columbia Investment Corporation*, 457 Pa. 353, 325 A.2d 289 (1974); *Commonwealth v. Feldman, supra.* Therefore, it is clear that under the *Beckwith* interpretation of *Miranda*, the instant appellee would not have been entitled to *Miranda* warnings since he was clearly not in "custody" during this interrogation.

Even if we were to accept the view that our cases have delineated a broader protection for Pennsylvania pursuant to the mandates of its Constitution, we nevertheless under the facts of this case would reach the same result.[4] There have been no cases in this jurisdiction that have ever suggested that *Miranda* warnings were to be required in investigations which were non-criminal in nature. McLaughlin was only the object of an administrative investigation at the time of the interview on April 29, 1971. The purpose of the investigation pursuant to the Philadelphia Home Rule Charter, Section 6–402 was to determine whether McLaughlin was entitled to be reimbursed for his alleged expenses. It was conducted by a City official, not a law officer. He voluntarily appeared in response to an administrative subpoena which carried no sanction for failure to appear except non-payment of the questioned expense vouchers and he was free to leave the interview at all times. The fact that information obtained during the course of this interrogation ultimately resulted in the initiation of criminal prosecution does not change the character of the interrogation itself.

In more compelling situations than the present instance this Court has declined to find that the accused was entitled to *Miranda* warnings. In *Feldman*, we held that the initial interrogation of the accused at a police station was permissible although it was conducted at a time that police officials had reason to believe that on the night of the killing the accused had blood on her person and that she had stated that she was leaving for a "short vacation". Clearly the facts in *Feldman* would be more persuasive in affording the *Miranda* protection than the fact that information that might be

4. The Commonwealth has the power to embellish the minimum rights guaranteed in the United States Constitution based on our Pennsylvania Constitution, art. I, Section 9. For cases indicating a state's power to provide a higher standard of protection than the constitutional minimum declared necessary by the United States Supreme Court see *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Commonwealth v. Triplett*, 462 Pa. 244, 249, 341 A.2d 62, 64 (1975); *Commonwealth v. Harris*, 429 Pa. 215, 219, n. 2, 239 A.2d 290, 292, n. 2 (1968).

gleaned during the course of an administrative investigation might ultimately result in criminal prosecution.

An even closer parallel to the facts presented in this appeal can be found in our decision in *Commonwealth v. Columbia Investment Corporation, supra.* There we concluded that even though the functions of investigating grand juries include uncovering criminal activity and recommending criminal indictments in accordance with their evidence, witnesses before such grand juries are not in the status of accused persons. *Id.* 457 Pa. at 356, 325 A.2d 289.

■ The finding of the suppression court that the statement was involuntary must also be rejected.[5] Appellant properly points out that at no point during the suppression proceeding did the appellee raise the issue of involuntariness. In the appellee's application to suppress there was no allegation that the statement was involuntary.[6] Further, when the Assistant District Attorney asked the Deputy City Comptroller whether he threatened to break the contract that the appellee had with the City if he did not sit down and talk with him, appellee's attorney objected to the question as immaterial and stated there was no allegation of threats in the motion. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

The order of the Superior Court is reversed and the case is remanded to the trial court for further proceedings consistent herewith.

ROBERTS, J., concurs in the result.

**5.** Since the Superior Court did not reach the question of voluntariness, the normal procedure on review by this Court would be to remand the matter for their consideration of this issue. However, since the record clearly establishes that this claim was not raised in the trial court, judicial economy is best served by our disposing of the question and avoiding the necessity of a second remand in this case.

**6.** Pennsylvania Rule of Criminal Procedure 323(d) states:
"The application shall state specifically the evidence sought to be suppressed, *the specific constitutional grounds rendering the evidence inadmissible*, and shall state with particularity the facts and events in support thereof." (Emphasis added).

MANDERINO, J., files a dissenting opinion.

JONES, former C. J., did not participate in the decision of this case.

MANDERINO, Justice, dissenting.

Appellee received an administrative subpoena from the Philadelphia City Comptroller to explain allegedly false expense vouchers. Appellee reported to the Comptroller's office where he was questioned and made an apparently incriminating statement. Since this investigatory proceeding was an important link in appellee's eventual prosecution, there is no question appellee could have refused to answer any questions which he reasonably believed might be used against him later. *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d 212, 216–17 (1972); *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118, 1124 (1951). The majority now holds, however, that he was not entitled to have a lawyer present to apprise him of that right. I dissent.

Appellee was "in custody" for purposes of the warnings mandated by *Miranda v. Arizona*. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d (1976), heavily relied on by the majority, is very different from this case. Whereas appellee was acting under the influence of a subpoena, and had to report to the Comptroller's Office, Beckwith was politely approached by IRS agents and questioned at his home. In both a real and practical sense, there was compulsion for appellee to appear before the Comptroller and answer questions; noncompliance meant certain nonpayment of the disputed vouchers and possible criminal indictments. This is in contrast to *Beckwith*, where the defendant's refusal to answer any questions had no such immediate and prejudicial consequences. More fundamentally, *Beckwith* was fully apprised of his Fifth Amendment rights, as well as his right to have any attorney present; that fact attenuated his claim that his statements should have been suppressed because he was not administered *Miranda* warnings. See 425 U.S. at 348–49, 96 S.Ct. 1612, 48

L.Ed.2d at 9 (Marshall, J., concurring). Appellee here was not so apprised, and the practical pressure to respond to questions about his expense vouchers was no different than the psychological pressures described in *Miranda*.

I also cannot agree with the majority's statement that "[t]he fact that information obtained during the course of this interrogation ultimately resulted in the initiation of criminal prosecution does not change the character of the interrogation itself." That fact very much changed the character of the interrogation, because a reasonable belief by appellee that his disclosures would be so used would give him the right not to answer the questions. *See, e. g., Kastigar v. United States, supra,* 406 U.S. at 445, 92 S.Ct. 1653, 32 L.Ed.2d at 217.

Hence, he should have been warned of this Fifth Amendment right as required by *Miranda.* I dissent.