COMMONWEALTH of Pennsylvania, Appellant

v.

Mark William BUSCH.

Superior Court of Pennsylvania.

Argued Dec. 9, 1997.
Filed April 28, 1998.

Michael Streily, Deputy Dist. Atty., Pittsburgh, for the Com.

William O. Schmalzried, Pittsburgh, for appellee.

Before DEL SOLE and FORD ELLIOTT, JJ., and CERCONE, President Judge Emeritus.

FORD ELLIOTT, Judge:

The sole issue presented in this appeal is whether the suppression court erred when it granted appellee's motion to suppress. Finding an error of law, we reverse.

Initially, we note that when reviewing the Commonwealth's appeal from the decision of the suppression court, 'we must consider only the evidence of the ... [defendant's] witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.' 'When the evidence supports the suppression court's findings of fact, we may reverse only when the legal conclusions drawn from those facts are erroneous.'

*Commonwealth v. Prosek,* 700 A.2d 1305, 1307 (Pa.Super.1997) (citations omitted). The suppression court's factual findings, which are supported by the record, follow:

Detective David Leffler, of the Allegheny County Police Department, testified that he was investigating the theft of gemstones from a Mr. Mira's[1] vehicle. The Defendant, Mark William Busch, according to the Detective was not only an employee of the victim, Mr. Mira, but also had been with the victim and left the business just a short time prior to the theft taking place. Therefore, the Detective felt that Mr. Busch was 'someone that needed to be spoken to in this investigation.' (ST p. 7)[2] The Detective stated that he got the Defendant's address and went to his residence on April 18, 1995. Upon arriving at the Defendant's residence the Detective stated that he informed the Defendant that 'we would like to speak to you about the theft', and that the Defendant did invite the Detectives to enter his residence. (ST p. 9) Detective Leffler stated ... that the questioning lasted approximately one half hour. Detective Leffler testified that the Defendant was also questioned on a second occassion [sic] that being October 18, 1995, the same date that a grand jury subpoena was being served on the Defendant. (ST p. 11). The Defendant was questioned at his home again on this instance. The Detective stated that this questioning of the Defendant was also unannounced and that the Defendant again allowed the Detectives into his home. During the questioning the Detectives showed the Defendant passages of letters in which Frank Tamburro offered testimony against his Co–Defendants and also passages in which the Defendnat's [sic] name is mentioned. The Detectives were aware of Mr. Busch's name being mentioned in the letters prior to the second questioning of the Defendant. (ST p. 11–15). Detective Leffler, testified that the investigation began on March 14, 1995, and that the Defendant's picture was used in a photo array, while interviewing witnesses from Rogers Hardware Store. On March 15, 1995, Detective Leffler also stated that the victim, Mr. Mira, was interviewed on March 16, 1995. The Detective relayed that the victim thought that the Defendant's behavior was 'out of the ordinary the day in question.' Also the Detective was told by the victim that he believed the Defendant was possibly involved with pilfering certain shipments. (ST p. 18–20)

---

1. The Presentment of the January, 1995, Allegheny County Investigating grand Jury refers to the victim as Remesh Mehra.

2. The suppression court's use of "ST" refers to notes of testimony from the suppression hearing held September 24, 1996.

The Detective testified that the Defendant was a suspect and that 'he was one person we thought might be involved,' and that is why the Defendant was in the photo array. (ST p. 21–22) Detective Leffler stated that the investigation had been ongoing for a month prior to the first time the Defendant was questioned and that Defendant was the focus of the investigation. (ST p. 23) The Detective could not recollect the first time the Defendant's name came up and could not reconcile the discrepancy between the date of the photo array in which the Defendant's picture appeared in [sic] and the first date the Defendant's name came up, which supposedly was after the photo array. (ST p. 25–26) Detective Leffler stated that during the second round of questioning the Defendant was asked incriminating questions and was not mirandized, and eventually asked the Detectives to leave his home[.] (ST p. 31–31)

Suppression court opinion, 5/30/97 at 2–4. Following a grand jury investigation, appellee was charged with one count of criminal conspiracy.[3]

Based on the facts set forth above, the suppression court found that "once the Defendant became a suspect in the case and the focus of the case, the Detectives should have given the Defendant his Miranda[4] warning." (*Id.* at 6.) We find that the suppression court erred in its legal conclusion that appellee was entitled to *Miranda* warnings when he was interrogated merely because he was a suspect in the case and/or a focus of the investigation. (Suppression court opinion, 5/30/97 at 6.) Our reasons follow.

The U.S. Supreme Court recently reviewed its position on the issue before us *vis-a-vis* the U.S. Constitution:

> We held in *Miranda* that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' ... An officer's obligation to administer *Miranda* warnings attaches, however, 'only where there has been such a restriction on a person's freedom as to render him 'in custody.' In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'
>
> Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. In *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), for example, the defendant, without being advised of his *Miranda* rights, made incriminating statements to Government agents during an interview in a private home. He later asked that *Miranda* 'be extended to cover interrogation in non-custodial circumstances after a police investigation has focused on the suspect.' 425 U.S., at 345, 96 S.Ct., at 1615[ ]. We found his argument unpersuasive, explaining that it 'was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial questioning.' *Id.*, at 346–347, 96 S.Ct., at 1616[ ]. As a result, we concluded that the defendant was not entitled to *Miranda* warnings: 'Although the "focus" of an investigation may indeed have been on Beckwith at the time of the interview ..., he hardly found himself in the custodial situation described by the *Miranda* Court as the basis for its holding.'

*Stansbury v. California*, 511 U.S. 318, 322–323, 114 S.Ct. 1526, 1528–1529, 128 L.Ed.2d 293 (1994) (per curiam) (other citations omit-

---

3. 18 Pa.C.S.A. § 903.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ted). The *Stansbury* court then listed its numerous decisions reaffirming the conclusion it reached in *Beckwith, supra. Stansbury v. California*, 511 U.S. at 323–324, 114 S.Ct. at 1529–1530, citing *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

Shortly after the Supreme Court announced its decision in *Beckwith, supra,* the Pennsylvania Supreme Court re-evaluated its position on the issue before us in *Commonwealth v. McLaughlin*, 475 Pa. 97, 379 A.2d 1056 (1977). The *McLaughlin* court first recognized that prior Pennsylvania cases might be interpreted as requiring *Miranda* warnings disjunctively; either when a suspect is taken into custody or when he becomes the focus of the investigation. *Commonwealth v. McLaughlin, supra* at 101–103, 379 A.2d at 1058. The *McLaughlin* court rejected this interpretation, however, observing that in each of the earlier cases "there was also present a degree of 'deprivation of liberty' which the *Beckwith* court found *Miranda* to require." *Id.* Thus, the *McLaughlin* court found Pennsylvania law to be in harmony with *Beckwith. Id. Accord Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985) (plurality), *cert. denied*, 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986). Recently, an *en banc* panel of this court reaffirmed the *McLaughlin* court's analysis when it noted that "The fact that a defendant was the focus of the investigation is ... a relevant factor in determining whether he was 'in custody,' but does not require, *per se, Miranda* warnings." *Commonwealth v. Peters*, 434 Pa.Super. 268, 275–276, 642 A.2d 1126, 1130 (1994) (*en banc*), *allocatur denied*, 538 Pa. 668, 649 A.2d 670 (1994).

Appellee recognizes that Pennsylvania law does not support the trial court's conclusion; therefore, he asks us to "revisit" the issue. (Appellee's brief at 9.) We must, however, decline appellee's invitation to rewrite the law of Pennsylvania. *See Dominick v. Statesman Ins. Co.*, 692 A.2d 188, 192 (Pa.Super.1997), *appeal denied*, No. 1998 Pa. Lexis 466, —— Pa. ——, —— A.2d —— (Pa. March 18, 1998) (noting that because "this Court's formal purpose is to maintain and effectuate the decisional law of our supreme court as faithfully as possible, we are not authorized to create or adopt a new standard[ ]"), citing *Commonwealth v. Dugger*, 506 Pa. 537, 545, 486 A.2d 382, 386 (1985).

■ As a result, we turn to the pivotal issue before us; namely, whether appellee was "in custody" so as to trigger his right to *Miranda* warnings when he was interrogated on April 18, 1995, and again on October 18, 1995.

It is well-settled that the police are only required to advise a person of his *Miranda* rights if that person is subjected to custodial interrogation.

The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

*Commonwealth v. Rosario*, 438 Pa.Super. 241, 264, 652 A.2d 354, 365–366 (1994) (*en banc*), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996), quoting *Commonwealth v. Foster*, 425 Pa.Super. 61, 67, 624 A.2d 144, 147 (1993) (other citations omitted). *Accord Commonwealth v. Ellis*, 700 A.2d 948, 954 (Pa.Super.1997). In *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323 (1988), *appeal denied*, 522 Pa. 601, 562 A.2d 824 (1989), this court noted, "Indeed, police detentions only become 'custodial' when under the totality of circumstances the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest." *Id.* at 356, 549 A.2d at 1332, citing *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (other citations omitted).[5]

---

5. A panel of this court in *Commonwealth v. Zogby*, 455 Pa.Super. 621, 689 A.2d 280 (1997), discussed *infra*, opined that the standard just set forth, and reiterated by the Supreme Court in

Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

*Commonwealth v. Peters, supra* at 275, 642 A.2d at 1130 (citations omitted).

As noted *supra*, appellee was interrogated in his home on two separate occasions, approximately six months apart. Appellee invited the two police officers who came to the door into his home, where the three sat in the living room. Detective Leffler testified that he took notes while Detective Matthews, who was seated on the sofa with appellee, asked most of the questions. (R.R. at 18a.) The first interview lasted approximately one-half hour, while the second was somewhat shorter. (R.R. at 19a, 25a.) Appellee does not claim that his statements were involuntary. Furthermore, the uncontroverted testimony of Detective Leffler indicates that while appellee appeared somewhat guarded, he evinced no reluctance to answer the officers' questions. (R.R. at 19a.) Nor does appellee claim that he felt intimidated by the police, or that his freedom was restricted. To the contrary, Detective Leffler's unchallenged testimony indicates that appellee asked the two police officers to leave during the second interview, and that they complied. (R.R. at 25a.)

Instead of claiming that he was subjected to a "custodial" interrogation, appellee merely points out that this court has found in-home interrogation to be "custodial" in two instances. (Appellee's brief at 5–7, citing *Commonwealth v. Dewar*, 449 Pa.Super. 517,

674 A.2d 714 (1996), *appeal denied,* 545 Pa. 649, 680 A.2d 1159 (1996), and *Commonwealth v. Zogby,* 455 Pa.Super. 621, 689 A.2d 280 (1997), *appeal denied,* 548 Pa. 658, 698 A.2d 67 (1997).) Both of those cases are, however, distinguishable.

In *Commonwealth v. Dewar,* the police went to the home of a doctor who was suspected of sexually molesting his patients, and asked him some questions. "The only evidence of record concerning the statements made by [Dewar] to the police" was the testimony of one of the police officers who questioned Dewar. *Commonwealth v. Dewar, supra* at 521, 674 A.2d at 716–717. This testimony indicated what Dewar had said before he was arrested, as well as the fact the officer had given Dewar his *Miranda* rights, but had not had him sign a form because the officer did not have one with him. *Id.* at 521–523, 674 A.2d at 717. As the *Dewar* court observed:

[G]iven the scant facts above, we are constrained to conclude that [Dewar] was in 'custody' when questioned. While we note that [Dewar] was questioned in his own home before he was arrested, [Dewar] was also the focus of the investigation and questioned in the presence of two police officers. *No evidence was offered as to the length of detention or whether appellee's freedom of movement was restricted.* Under the circumstances, given the evidence presented, we cannot find that the trial court erred in concluding that appellee was in 'custody' during the police interrogation.

*Id.* (emphasis added).

■ Comparing the facts of *Dewar* with the facts in our case, we note that the police in *Dewar* read Dewar his *Miranda* rights before questioning him, thus indicating that the police believed Dewar was in custody. As the Supreme Court stated in *Stansbury, supra:*

Stansbury v. California, supra appears "somewhat more stringent than the standard recited above as applicable in the Commonwealth of Pennsylvania." *Commonwealth v. Zogby, supra* at 624 n. 2, 689 A.2d at 282 n. 2. According to the *Zogby* panel, "The Pennsylvania test does not qualify the restriction of freedom to be to a degree generally associated with a formal ar-

rest...." *Id.* We are not bound by this dictum in *Zogby,* and in any case, it does not appear to be consistent with Pennsylvania law as set forth above. *See also Commonwealth v. Peters, supra* at 275–276, 642 A.2d at 1130 (noting the factors a court uses to determine whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest).

An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her " 'freedom of action.' "

*Stansbury v. California,* 511 U.S. at 325, 114 S.Ct. at 1530 (citations omitted). A reasonable person who is read his *Miranda* rights might well conclude that he is not free to leave, but is, in fact, under arrest. With no other evidence in the record to indicate Dewar believed otherwise, the suppression court in *Dewar* had little choice but to conclude that Dewar was in custody. "When a defendant files a motion to suppress, the burden is on the Commonwealth to prove, by a preponderance of the evidence, that the challenged evidence is admissible." *Commonwealth v. Blasioli,* 454 Pa.Super. 207, 215, 685 A.2d 151, 155 (1996), *appeal granted in part on other grounds,* 548 Pa. 36, 693 A.2d 584 (1997), citing Pa.R.Crim.P. 323 (other citations omitted). In *Dewar,* the Commonwealth simply failed to meet this burden. By contrast, in our case, the Commonwealth presented evidence that appellee invited the police officers into his home where he was questioned in the living room for one-half hour or less, that he felt comfortable asking the officers to leave, and that they complied.

In *Commonwealth v. Zogby, supra,* the other case relied upon by appellee, this court found that Zogby was the subject of a custodial interrogation when the police, who were investigating a hit-and-run accident, came into his bedroom at 4:00 a.m. after being admitted by his roommate, awakened Zogby from a sound sleep by shaking his leg and pulling off his covers, and advised him to come outside to answer some questions about damage to the side of his car. *Commonwealth v. Zogby, supra* at 621–623, 689 A.2d at 281. Zogby was not told he could decline the officer's invitation; in fact, the officer

testified that he would have persisted in attempting to gain Zogby's cooperation until he complied. *Id.* at 625–626, 689 A.2d at 283. Clearly, nothing in our case indicates the coercion present in *Zogby.* *See also Commonwealth v. Ellis,* 700 A.2d at 955 (Ellis, who was a suspect in an armed robbery and who was being treated at a hospital for gunshot wounds received during the robbery, was not in custody when he was interrogated by a police officer while in the hospital, where Ellis agreed to answer questions but did not want to talk in his room, where the police officer and Ellis, with the assistance of a nurse, moved to a lounge area; and where the officer made no threats or promises nor any effort to restrain Ellis, who was still medicated from surgery); *Commonwealth v. Jones,* 546 Pa. 161, 175–177, 683 A.2d 1181, 1188 (1996) (Jones was not in custody for purposes of *Miranda* when he made statements while barricaded inside his house, which was surrounded by police, who had contacted him by telephone).

The trial court's findings of fact do not support a conclusion that appellee was "in custody" when the police interviewed him in his home on two separate occasions.[6] Additionally, the trial court erred when it concluded that appellee was entitled to *Miranda* warnings merely because he was the focus of the investigation. As a result, we must find that the trial court erred when it suppressed appellee's statements.

The suppression order is vacated. Case is remanded for trial. Jurisdiction is relinquished.

---

**6.** Unlike the trial court in *Dewar, supra,* the trial court instantly did not find that appellee was in custody because the court did not reach that issue. *See Commonwealth v. Dewar, supra* at 523 n. 5, 674 A.2d at 717 n. 5 (noting that the trial court implicitly decided that appellee was subjected to a custodial interrogation based on the Commonwealth's failure to prove appellee's waiver and understanding of his *Miranda* rights).