J-S80028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

Appellee

v.

VANDY BLANKENSHIP

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 301 MDA 2016

Appeal from the Judgment of Sentence January 19, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0004698-2014

BEFORE:  LAZARUS, STABILE, and RANSOM, JJ.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 09, 2017**

Appellant Vandy Blankenship appeals from the January 19, 2016 judgment of sentence entered in the Court of Common Pleas of Lancaster County ("trial court") following a jury trial where Appellant was found guilty of first degree murder.[1]  Appellant challenges the denial of his omnibus motion to suppress.  Upon review, we affirm.

The matter stems from a homicide that occurred on or around September 3, 2014.  On March 16, 2015, Appellant filed an omnibus pretrial motion, including a motion to suppress.  The trial court held a suppression hearing on May 12, 2015.  On December 9, 2015, the trial court issued an

_____

[1] 18 Pa.C.S.A. § 2502(a).

opinion and order denying Appellant's suppression motion. The trial court

made the following factual findings.

On September 3, 2014[,] at approximately 2:09 A.M. [Appellant] called Lancaster 911[FN1] stating that he wanted to report a murder. Officers Hatfield and Hanby arrived at the scene an[d] met Lieutenant Laser and Sergeant Stoltfus. Laser was in the residence and Stoltfus was on the front porch talking with [Appellant]. Officer Hatfield at the instruction of Lieutenant Laser began talking to [Appellant].

[Appellant] acknowledged that he made the 911 call after he arrived home and found the victim in a pool of blood. Hatfield checked with Countywide Communications and was informed of a York County warrant, however [Appellant] was not arrested. Hatfield asked if he would accompany them to the police station to talk about the incident and he agreed. [Appellant] also agreed to be searched for the safety of the police and no weapons were found. [Appellant] voluntarily entered the car, he was not handcuffed, and they drove to the police station.

Upon arrival they entered the station and went to the media room. Officer Hatfield left to obtain a guest information sheet, and [Appellant] and another police officer, Sergeant Mummau remained. Officer Hatfield returned and the guest information sheet was filled out. [Appellant] was talking to the officers for about 30 minute to 1 hour. He was not given any **Miranda** warnings and the interview was basically an information gathering section[(sic)].

. . . .

After the first interview [Appellant] was questioned by Det. Mackley.[2] Detective Mackley arrived and introduced himself to [Appellant] in the media room. Detective Mackley then left for about 40 minutes to take

---

[2] Detective Mackley was also joined by Detective Zook.

- 2 -

care of some other matters. He returned and asked [Appellant] if he would come upstairs to the detective division on the third floor. [Appellant] did and when they arrived [Appellant] agreed to be interviewed. [Appellant] was offered food and drink but declined. The interview started at 4:00 A.M. and continued to 8:30 A.M. [Appellant] had not been formally arrested no[r] were any *Miranda* warnings given.

. . . .

At 8:30 A.M. the two detectives concluded the general interview and began a formal question and answer interview with [Appellant]. This consisted of 10 pages containing 92 questions and answers. This interview commenced at 8:40 A.M. and concluded at 12:30 P.M. This was simply a continuation of the interview between [Appellant] and [Detective] Zook. [Appellant] was not given any *Miranda* warnings because he was not under arrest. He was fully cooperative with the police, never requesting an attorney, and never asked to end the interview or leave.

At the conclusion of the interview [Appellant] was asked to provide a buccal sample and agreed to do so. Prior to giving the swab [Appellant] signed a Lancaster Bureau Police Consent agreeing to it.

At 12:45 P.M. [Appellant] was officially arrested on the outstanding York County warrant. He was given his *Miranda* warnings at 12:51 P.M. Detective Mackley testified that [Appellant] understood his *Miranda* rights and then when asked at the hearing whether [Appellant] indicated that he wanted to proceed with continuing with the interview Detective Mackley answered "Yes, Sir. He was eager."

This continued until 4:58 P.M. when Detective Winters entered the room and Detective Mackley left. Detective Winters continued questioning until approximately 7:00 P.M. when he terminated the interview.

[FN1] He used the victim's cell phone.

- 3 -

Trial Court Opinion, 12/11/2015, at 1-5 (footnotes 2 and 3 omitted).

After a jury trial that occurred from January 11 through January 19, 2016, Appellant was convicted of first degree murder and sentenced to life. Appellant did not file any post-sentence motions; however, Appellant filed a timely notice of appeal on February 18, 2016. After directing Appellant to comply with Pa.R.A.P. 1925(b) and ordering the Commonwealth to respond, the trial court entered an opinion pursuant to Pa.R.A.P. 1925(a) on April 14, 2016.

Appellant raises two issues on appeal.

I.    Did the trial court err in denying [Appellant's] motion to suppress, where police did not have probable cause to arrest [Appellant] at 4:10 a.m. after approximately an hour of initial questioning when he was placed in a secure room, and therefore, any evidence taken from or statements made by [Appellant] should have been suppressed as fruit of the illegal arrest?

II.   Did the trial court err in denying [Appellant's] motion to suppress where police subjected [Appellant] to a custodial interrogation on September 3, 2014[,] at 4:10 a.m. without advising [Appellant] of his *Miranda* rights, and therefore, any statements made by [Appellant] should have been suppressed?

Appellant's Brief at 4.

Appellant's arguments are practically identical; essentially, Appellant argues that the trial court erred in denying the motion to suppress because Appellant was in custody and subjected to a custodial interrogation at 4:10 a.m. without being advised of his *Miranda* rights.

Our standard of review of the denial of a motion to suppress is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Ransom*, 103 A.3d 73, 76 (Pa. Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010), *cert denied* 131 S. Ct. 110 (2010) (citations, quotations, and ellipses omitted)). Appellant is not challenging the factual findings made by the trial court. Thus, the only issue is whether the Appellant was subject to a custodial interrogation at 4:10 a.m.

It is clear from the record that Appellant was subject to interrogation; therefore, the paramount question is whether Appellant was in custody at the time of questioning. "A person is in custody for *Miranda* purposes only when he is 'denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v.*

*Boczkowski*, 846 A.2d 75, 90 (Pa. 2004) (quoting *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa. 1999)).

> [I]n determining whether an individual was in custody, the 'ultimate inquiry is … whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest. The question of custody is an objective one, focusing on the totality of the circumstance, with due consideration given to the reasonable impression conveyed upon the person being questioned.

*Id.* (citations omitted). Additionally, factors to determine whether an individual has been in custody include: "the basis for detention; its length; its location; whether the suspect was transported against his or her will; how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened, or used force; and the investigative methods employed to confirm or dispel suspicions." *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (citing *Commonwealth v. Busch*, 713 A.2d 97, 101 (Pa. Super. 1998)).

In the matter *sub judice* after officers responded to the scene following Appellant's 911 call, Appellant was asked to accompany Officer Hatfield to the police station for an interview. Prior to entering the vehicle, he was searched solely for officer safety purposes. Appellant was not handcuffed or restrained in any manner. Upon entering the police station he was led to an unsecured portion of the police station while Officer Hatfield filled out a guest information sheet. After his initial interview, Appellant was questioned by Detective Mackley, who introduced himself to Appellant in the media

room. Detective Mackley left Appellant for about 40 minutes to take care of some other matters. Appellant is not asserting that he was in custody at that time.[3]

Appellant's challenge flows from the interrogation after Detective Mackley returned. At approximately 4:10 a.m., Detective Mackle returned and asked Appellant if he would come upstairs to the detective division on the third floor. Appellant consented and agreed to be interviewed. Appellant was not in restraints at this time. Appellant was offered food and drink. Furthermore, Appellant was fully cooperative with the police, never requested an attorney, to leave, or to end the interview. While Appellant's interview lasted for an extended period of time, that alone is not determinative. Upon review of the totality of the circumstances, Appellant was not in custody at 4:10 a.m. on September 3, 2014. As Appellant was not in custody, he was not subject to a custodial interrogation and the officers were not required to advise him of his ***Miranda*** rights. Therefore, the trial court properly denied Appellant's motion to suppress. Appellant's claim fails.

---

[3] Appellant is arguing that there was no probable cause to arrest Appellant at this point; however, Appellant was not arrested at that time.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2017