J-S18017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY P. LIBENGOOD | : | |
| | : | |
| Appellant | : | No. 1836 MDA 2018 |

Appeal from the PCRA Order Entered October 11, 2018
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000918-2015

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED AUGUST 30, 2019**

Appellant Jeffrey P. Libengood appeals from the order denying his first timely petition under the Post Conviction Relief Act[1] (PCRA).  Appellant argues that trial counsel was ineffective for failing to file a motion to suppress the statement Appellant gave to police following a polygraph examination.  We affirm.

We adopt the PCRA court's facts and procedural history.  *See* PCRA Ct. Op., 10/11/18, at 1-4.

Appellant raises the following issues for our review:

1. Did the [PCRA court] commit an error of law by denying [Appellant's] PCRA claim that [Appellant's] trial counsel committed ineffective assistance of counsel by failing to file a

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

motion to suppress [Appellant's] March 26, 2015 statement to the police?

2. Did [Appellant's] trial counsel commit ineffective assistance of counsel by failing to file a motion to suppress [Appellant's] March 26, 2015 statement to the police?

Appellant's Brief at 4.

Following our review of the record, the parties' briefs, and the well-reasoned opinion of the PCRA court, we find no error of law in the PCRA court's ruling. *See Commonwealth v. Watley*, 153 A.3d 1034, 1039 (Pa. Super. 2016). Specifically, we agree with the PCRA court that Appellant did not establish that his statements were involuntary under the totality of the circumstances. *See* PCRA Ct. Op. at 4-8. Therefore, we affirm on the basis of the PCRA court's opinion concluding that trial counsel was not ineffective for failing to litigate a meritless suppression issue. *Id.* at 8.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/30/2019

- 2 -

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY--CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : No. 918-15

:

:

vs. :

:

JEFFREY P. LIBENGOOD, :

            Defendant :

:

District Attorney's Office - for the Commonwealth

Christopher M. Riedlinger, Esquire, Public Defender's Office - for Defendant

## DECISION

RUSSELL, J.

Defendant Jeffrey P. Libengood filed a post-conviction collateral relief petition on June 5, 2018. Via order of June 8, 2018, the Court directed the Schuylkill County Office of Public Defender to appoint counsel for Defendant as he previously had been represented by private counsel. Although the Court further allowed counsel to amend the pro se filing, no counseled amendment to Defendant's pro se petition was thereafter filed.[1] At the hearing on September 6, 2018, Defendant's counsel represented that he had reviewed his client's pro se filing and determined that the only issue which had merit and which would be pursued was that Defendant's statement to police had been coerced, as alleged at paragraph 68 of the petition. Defendant otherwise waived the balance of the issues set forth in his petition.

Defendant, found guilty by a jury of rape of a child and related charges, was sentenced on January 25, 2016, inter alia, to serve ten to twenty years' incarceration,

---

[1] In the past, Defendant had filed post-conviction collateral relief petitions; however, the June 5, 2018 petition is considered his first as the prior filings had been withdrawn/dismissed as premature.

1

followed by five years' probation. The jury's verdict was based on evidence that Defendant had committed various sexual assaults upon the granddaughter of his girlfriend over an approximate twelve month period. Numerous witnesses, including the then third grade child and Pennsylvania State Police Trooper Wesley Levan, II - to whom Defendant had confessed - testified at trial. Defendant offered character witness testimony and also testified in his own defense.

Following sentencing, Defendant filed a post-sentence motion which was denied. A direct appeal followed. The Pennsylvania Superior Court affirmed this court's judgment of sentence by published opinion of December 16, 2016.[2] By order of July 11, 2017, Defendant's petition for allowance of appeal to the Pennsylvania Supreme Court was denied.

At the September 6, 2018 hearing, Defendant and Trooper Levan were called as witnesses. Defendant testified that the day of his interview with Trooper Levan he arose about 4:30 a.m., started work at 5:30 a.m. and worked until he met with the trooper. The police interaction began about 5:45 p.m. during which Defendant underwent a polygraph examination which was preceded and followed by interviews with the examining trooper. Initially, Defendant was advised verbally and in writing that the procedure would involve a pre-test interview and polygraph examination and could include a post-test interview. In addition, Defendant was told that his submission to the testing was voluntary. He also read and was advised, inter alia, the following:

> 2. By signing my name at the bottom of this form, I acknowledge that I have read and fully understand the rights stated herein, that no promises have been made to me and that I have not been threatened in any manner;

---

[2] A memorandum opinion filed November 29, 2016 was subsequently withdrawn via order of December 7, 2016.

2

A. I have the absolute right to remain silent.

B. If I give up this right, anything that I say can and will be used against me in a court of law.

C. I have the right to talk to an attorney before, and have an attorney present during, questioning.

D. If I cannot afford an attorney, one will be appointed to represent me, without charge, before any questioning, if I so desire.

E. If I decide to answer any questions, I may stop anytime that I wish.

Commonwealth's Exhibit No. 1, September 6, 2018).

Defendant testified that as of May 26, 2015, the date of the polygraph examination, he was taking medication for congestive heart failure and that during the testing he had heart palpitations and felt light-headed. After the polygraph testing, Defendant claimed that Trooper Levan's demeanor toward him changed dramatically - namely, like night and day - that he slammed a chair on the floor and got in Defendant's face. Defendant characterized the trooper as being aggressive and claimed that he got loud and began angrily asking questions such that Defendant felt threatened and not free to leave.

According to the evidence, Defendant's interaction with police, including the polygraph procedure and pre-and post-interviews, encompassed about two one-hour twenty minute sessions with an intervening fifteen minute break during which Defendant left the police barracks. After the polygraph examination and Defendant's being advised that he had failed the test, he admitted to having committed various sexual assaults upon the young child.

The entire procedure with perhaps the exception of the fifteen minute break period was depicted on a video/audio recording. Portions of the recording which

3

counsel believed were relevant to the Court's determination were played at the September 6, 2018 hearing. They included pre-test and test excerpts and the entire post-test interview. Trooper Levan's testimony that he did not slam a chair on the floor at the start of the post-test interview was confirmed by the recording, as was his testimony that he did not yell at Defendant during the interview. In fact, the entire recording did not support Defendant's claim that the trooper exhibited anger or aggression, got loud, threatening or, as Defendant testified, got in the latter's face. Nothing depicted in the recording conveyed that Defendant's ability to terminate the discussion or leave the state police barracks had changed from the pre-test interview stage. At the end of the post-test interview and his having made inculpatory statements Defendant remained free to leave the premises.

## Discussion

Defendant asserts that he is only pursuing a claim that his trial attorney had been ineffective in not filing a pre-trial motion to suppress the inculpatory statements Defendant made to Trooper Levan during the post-test interview. Defendant's claim is entitled to consideration in collateral proceedings as he has been convicted of crimes, is serving a sentence of imprisonment, contends that the convictions resulted from ineffective assistance of counsel, and, the issue has not been previously litigated or waived. To obtain relief he is required to have both pled and proved that the convictions resulted from ineffective assistance of counsel, "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." (42 Pa.C.S. 9543(a)(2)(ii) ).

4

In this regard, Defendant must "satisfy the performance and prejudice test" of *Strickland v. Washington*, 466 U.S. 668 (1984) and prove that: "(1) the underlying claim has arguable merit;  (2) no reasonable basis existed for counsel's action or failure to act; and  (3) [he] suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Commonwealth v. VanDivner*, 178 A.3d 108, 114 (Pa. 2018) (citations omitted).  In examining the claim, Defendant's trial counsel is "presumed to have rendered effective assistance, and, if [his] claim fails under any required prong of the *Strickland* test, the court may dismiss the claim on that basis." Id.

Consequently, Defendant is required to plead and prove that the claim he has desired to pursue, namely, that his confession had been coerced, has merit.  If the confession was not coerced, he would not have been entitled to suppression relief and, therefore, would not have suffered any prejudice from his trial counsel's failure to file and litigate the issue pre-trial.  When an accused's statements are sought to be suppressed, the Commonwealth bears the burden of establishing by a preponderance of the evidence that statements were not obtained in violation of his rights and are admissible. *Commonwealth v. Busch*, 713 A.2d 97 (Pa. Super. 1998).

A confession given during custodial interrogation is presumptively involuntary unless an accused is advised of *Miranda* warnings - the rights to remain silent and to counsel - and he has knowingly, voluntarily and intelligently waived those rights. *Commonwealth v. Williams*, 650 A.2d 420 (Pa. 1994).  However, *Miranda* warnings are not required where the interrogation is not custodial.

5

A police detention is "custodial when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to become the functional equivalent of arrest" - namely by one's being "physically deprived of his freedom in any significant way or [being] placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. DiStefano*, 782 A.2d 574, 579 (Pa. Super. 2001), appeal denied, 806 A.2d 858 (Pa. 2002). Factors to be considered when examining the totality of the circumstances and whether the detention became so coercive as to be the functional equivalent of arrest include, "the basis for the detention; the location; whether the suspect was transported against his will; how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions." Id. at 580.

Whether or not Defendant was in custody, the voluntariness of the inculpatory statements will also be examined. The test for voluntariness of a confession is whether it was the "product of an essentially free and unconstrained choice." *Commonwealth v. Alston*, 317 A.2d 241, 243 (Pa. 1974). In deciding whether statements were voluntarily made, the surrounding circumstances must be examined as a "noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where the behavior of . . . . law enforcement officials was such as to overbear [the accused's] will to resist and bring about confessions not freely self-determined . . . .", thereby resulting in them being classified as involuntary. *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (citations omitted). Similar to the issue of custodial interrogation, voluntariness is assessed pursuant to the totality of the

6

circumstances with factors to be examined including "the duration and means of the interrogation; the accused's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any and all other factors which may serve to drain one's powers of resistance to suggestion and coercion." *Commonwealth v. Jones*, 683 A.2d 1181, 1189 (Pa. 1996) (citations omitted).

In his petition, Defendant did not precisely state that he had been subject to custodial interrogation or that he had not voluntarily waived his rights to remain silent and to be represented by counsel. However, it is assumed that these issues are encompassed within his complaint that his statements were coerced. Nevertheless, the evidence does not support such contentions. The totality of the circumstances establish both that Defendant had never been in custody at any relevant time and that the statements made by him had not been the result of anything other than his free choice. The reliable evidence elicited at the September 6, 2018 hearing which included the video/audio recording of the interaction between Defendant and Trooper Levan establishes that Defendant's statements to the trooper were not the product of mental or physical duress or the result of coercion, threats or other improper influence. Defendant's interaction with the trooper lasted about three hours during which Defendant was permitted to and did leave the police barracks on one occasion for about fifteen minutes. The trooper neither displayed threatening actions or raised his voice as claimed by Defendant.

Defendant was advised both verbally and in writing of his ability to terminate the encounter with the trooper at any time and of his rights to remain silent and to counsel

7

and waived those rights without coercion. No basis existed to require that Defendant be advised a second time of his ability to terminate the encounter and leave the barracks. Further, the credible evidence produced did not support finding that Defendant was excessively tired from work or lack of sleep, was experiencing medical problems or was under psychological stress such that any such conditions or a combination thereof would or did result in an involuntary confession. Defendant was not brought to the police barracks against his will, was not restrained while there, was at all times free to leave and was interviewed/tested less than three hours – which period included a fifteen minute break. The interrogator displayed neither an aggressive nor angry attitude but spoke calmly throughout the interaction, including during the post-test interview. The fact that Trooper Levan raised doubts about the credibility of Defendant's claim of innocence does not change the voluntary nature of the confession.

As Defendant would not have been entitled to suppression relief on the grounds that his statements had been coerced, his trial counsel was not ineffective in failing to raise the issue. Because the only claim Defendant desired to pursue in the petition is without merit, his petition is being denied.