IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherman Hostetter Group LLC,      :
             Petitioner      :
        v.      :    No. 86 C.D. 2024
     :
     :    Submitted: March 4, 2025
State Board of Auctioneer Examiners,      :
             Respondent      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE McCULLOUGH               FILED: April 29, 2025


       Sherman Hostetter Group LLC (Petitioner) petitions for review of the January 2, 2024 final adjudication of the State Board of Auctioneer Examiners (Board) that upheld a citation and $500.00 civil penalty issued to Petitioner on April 29, 2022, for operating as an auction company with a lapsed license in violation of Sections 3(a)(1), 5(e), and 20(a)(9) of the Auctioneer Licensing and Trading Assistant

Registration Act (Act),[1] 63 P.S. §§ 734.3(a)(1),[2] 734.5(e),[3] and 734.20(a)(9).[4]  After careful review, we affirm.

## I.    Factual Background

Petitioner is licensed as an auction company in the Commonwealth of Pennsylvania (Commonwealth) under License No. AY002064.  Petitioner has two auctioneers of record on file with the Board, one of whom is Sherman E. Hostetter, Jr. (Mr. Hostetter).  Mr. Hostetter is Petitioner's owner.  He is also a sitting member of the Board, having been appointed by the Governor.[5]

---

[1] Act of December 22, 1983, P.L. 327, *as amended*, 63 P.S. §§ 734.1 – 734.34.

[2] This section makes it unlawful for a person to engage in the business or profession of an auctioneer or auction company without first obtaining a license from the Board.

[3] This section, governing applications for renewal of licenses, provides:

> **(e) Expiration and renewal of license**.--All licenses issued by the [B]oard shall be for a maximum term of two years and shall expire on the last day of February of each odd year. It is the duty of all persons licensed to practice as an auctioneer, apprentice auctioneer or auction company to renew the license biennially with the [B]oard and to pay the license fee for each biennial license renewal. Applications for renewals of licenses issued under this act shall be made within 60 days prior to the expiration of the license on forms and in the manner provided by the [B]oard.

63 P.S. § 734.5(e).

[4] This section, which governs enforcement actions, provides: "**(a) General rule.**--The [B]oard may refuse, suspend or revoke licenses or registrations issued by the board or impose a civil penalty not exceeding $10,000 when it finds the applicant, licensee or registrant to have been guilty in the performance or attempt to perform any of the following: . . . (9) Violating any of the provisions of this [A]ct." 63 P.S. § 734.20(a)(9).

[5] The Board is currently made up of the Commissioner of the Bureau of Professional and Occupational Affairs (Bureau), a consumer protection member, three auctioneers, and a registered trading assistant.

Petitioner allowed its license to lapse from March 1, 2021, through at least March 16, 2022. On March 4, 2023, Petitioner submitted an application to the Pennsylvania Department of State (Department) to reactivate its license (Reactivation Application) on which Mr. Hostetter checked the box in Section 1, which indicates: "**Yes, this auction company has been operating in Pennsylvania after 02/28/2021 and I want to reactivate my license at this time by paying the renewal fee(s) and applicable late renewal fees. A late renewal fee of $5.00 per month is assessed when postmarked after 02/28/2021.**" (Reproduced Record (R.R.) at 105a) (emphasis added). Along with the Reactivation Application, Petitioner paid a total fee of $325.00, which included a reactivation fee of $260.00 and a late fee of $65.00. *Id.*

On April 29, 2022, the Department issued a Citation and imposed a civil penalty in the amount of $500.00[6] upon Petitioner for "operating an auction company on a lapsed license in this Commonwealth." *Id.* at 1a. An electronic signature bearing the name of "Karen Hunter" appeared in the box labeled "Issuer Signature." *Id.* On May 11, 2022, Mr. Hostetter submitted a plea on behalf of Petitioner denying the violations as charged in the Citation. *Id.*

On September 21, 2021, a formal hearing on the Citation was conducted before Bureau Hearing Examiner Hope Goldhaber. Mr. Hostetter was not in attendance. Petitioner was represented by counsel. The Commonwealth offered into evidence a Certificate of Attestation dated September 13, 2021, marked as Exhibit C-2, which attested to the fact that Petitioner's license was lapsed from March 1, 2021, to March 16, 2022. Petitioner objected to the admission of Exhibit C-2 on the ground that it contained hearsay. *Id.* at 23a-24a. The Commonwealth also offered into

---

[6] The Board's schedule of civil penalties located at 49 Pa. Code § 43b.12a sets forth a civil penalty of $500.00 for a first offense of operating an auction company on a lapsed license in this Commonwealth in violation of 63 P.S. §§ 734.3(a)(1), 734.5(e), and 734.20(a)(9).

evidence as Exhibit C-3, a Certificate and Attestation signed and dated by the Board's Administrator and legal custodian of records for the Board, who attested that the Reactivation Application attached thereto was a true and accurate copy of that document. *Id.* at 26a-27a. Petitioner objected to the admission of the Reactivation Application on the grounds that it failed to inform Petitioner that the information provided could be used against it in a "quasi-criminal" administrative disciplinary proceeding. *Id.* at 27a.

The Commonwealth also presented the testimony of Professional Conduct Investigator Nicholas Howard (Investigator Howard). Investigator Howard testified that he interviewed Mr. Hostetter and, during this interview, Mr. Hostetter confirmed that he allowed Petitioner's license to lapse, he continued to operate unknowingly with a lapsed license, and he conducted 121 auctions while Petitioner's license was lapsed. Investigator Howard also testified that Mr. Hostetter gave him his business card, which listed his email and auction website. Investigator Howard testified that, using this business card, he accessed Petitioner's website, hostetterauctioneers.com, and confirmed that Petitioner had conducted auctions in the Commonwealth of Pennsylvania while its license was lapsed. He also testified that while he was on Petitioner's website, he took screenshots of Petitioner's contact page and screenshots of the listings for completed auctions conducted in Pennsylvania between March 1, 2021, and February 28, 2022, while Petitioner's license was lapsed.

The Commonwealth offered into evidence Exhibits C-4 and C-5, which consisted of Investigator Howard's screenshots. *Id.* at 111a-236a. In addition, the Commonwealth introduced into evidence an Order of the Department's Commissioner, marked as Exhibit C-6, confirming that professional conduct investigators, regulatory enforcement inspectors, prosecuting attorneys of the Bureau's Legal Office, and staff

4

of the Professional Compliance Office are authorized to issue citations and impose penalties for violations of the Act. *Id.* at 237a. Petitioner objected to the admission of the Order on the grounds that the delegation of authority as explained in the Order was inconsistent with the Act and regulations.[7] *Id.* at 71a-73a.

In its defense, Petitioner's counsel argued that the Citation and investigation were defective because: (1) the Citation was issued by someone named Karen Hunter, who the Commonwealth did not prove was authorized to do so under 49 Pa. Code § 43b.3,[8] because she was not the agent who conducted the investigation; and (2) the Citation violated Petitioner's due process because it gave no "*Miranda*-like"[9] warning that information provided in Section 1 (asking the applicant to confirm that

---

[7] Hearing Examiner Goldhaber admitted Exhibits C-1, C-2, C-3, and C-6 over Petitioner's objections at the hearing but reserved ruling on the admissibility of Exhibits C-4 and C-5 until issuance of her decision.

[8] The Board's regulation at 49 Pa. Code § 43b.3, which governs procedures for inspections, investigations, and the imposition of civil penalties under the Act, provides:

> **(a) Inspections/investigations.** Authorized agents may conduct inspections and investigations for the purpose of ascertaining compliance with statutory provisions and regulations of licensing boards and commissions relating to required licensure and the conduct or operation of a business or facility.
>
> **(b) Citations.**
>
> > (1) If an inspection reveals a violation of a statute or a regulation for which a civil penalty has been established under the schedules in this chapter, the authorized agent may prepare a citation indicating the violations found and the penalties imposed. A copy of the citation will be provided to the respondent.

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the applicant has operated in the Commonwealth since the last license renewal period) could be used to initiate an administrative disciplinary investigation and as evidence against it in an administrative disciplinary proceeding. Petitioner also objected to the admissibility of Commonwealth Exhibits C-4 and C-5 (screenshots of the listings for completed auctions on Petitioner's website) on the grounds that they were not authenticated, were not relevant, and constituted inadmissible hearsay.

On April 28, 2023, Hearing Examiner Goldhaber issued an order upholding the Citation, concluding that the Commonwealth met its burden of proof that Petitioner operated its auction company on a lapsed license. *Id.* at 282a-99a. Citing the Reactivation Application (Exhibit C-3), Hearing Examiner Goldhaber found that Petitioner's auction company's license lapsed from March 1, 2021, through at least March 16, 2022. *Id.*, Finding of Fact (FOF) 26. Hearing Examiner Goldhaber found that Petitioner violated 63 P.S. §§ 734.3(a)(1) 734.5(e), and 734.20(a)(9), because it conducted more than 100 auctions in Pennsylvania from March 1, 2021, through February 28, 2022, while its license was lapsed. Hearing Examiner Goldhaber also addressed Petitioner's challenge to the admissibility of the Commonwealth's various exhibits. The order imposed a civil penalty of $500.00.

Petitioner filed exceptions on January 2, 2024. Because Mr. Hostetter is Petitioner's owner and a sitting member of the Board, all members of the Board recused themselves and delegated the matter to Bureau Hearing Examiner Travis Anderson for purposes of issuing a final determination. (R.R. at 316a.) On October 19, 2023, Petitioner filed exceptions to that delegation and requested that the Board schedule a status conference and permit oral argument on the delegation issue. On January 2, 2024, after the filing of briefs by the parties addressing the Board's delegation order, Hearing Examiner Anderson entered an order overruling Petitioner's objection to the

6

delegation and denying Petitioner's request for a scheduling conference and oral argument. Hearing Examiner Anderson issued a Final Order adopting the findings and conclusions of Hearing Examiner Goldhaber. *Id.* at 339a-40a.

On appeal,[10] Petitioner argues that (1) the Commonwealth's investigation and Citation were defective and procedurally infirm because (a) the Commonwealth did not demonstrate that Investigator Howard was authorized by the Board to conduct his investigation; and (b) the Commonwealth did not demonstrate that Karen Hunter was authorized to issue the Citation; (2) the Reactivation Application was constitutionally infirm because it did not warn Petitioner that the statements relative to possible license violations could result in disciplinary action and would be used against Petitioner in such action; (3) the delegation of the matter to Hearing Examiner Anderson deprived Petitioner of an opportunity for an exercise of the **Board's** discretion with respect whether to impose a penalty; (4) by charging a late renewal penalty and a civil penalty, the Commonwealth has imposed multiple sanctions for the same alleged conduct; and (5) the Commonwealth's exhibits were not admissible or probative.

---

[10] The Commonwealth Court may reverse or modify the adjudication of a Commonwealth agency if (i) the adjudication is in violation of constitutional rights, (ii) if it is not in accord with agency procedure, (iii) if any finding of fact is not supported by substantial evidence, or (iv) if it is not in accordance with law. *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 365 n.4 (Pa. 1991).

7

## II. Analysis[11]

### 1.

In its first issue, Petitioner contends that Investigator Howard required written authorization from the Board to investigate the matter and that Investigator Howard was required to exhibit this written authorization to Petitioner before beginning the investigation. In support, Petitioner relies on Section 16(a) and (b) of the Act, governing the retention of written records of sales, which provides:

> **(a) General rule.** -- Every licensee and registrant under this [A]ct who receives or accepts any property for sale at auction or sale through an online trading assistant consignment sale transaction shall maintain a written record which shall contain the following information, provided that, if the transaction is being conducted by an auction company or a trading assistant company, the records shall be maintained by the auction company or trading assistant company:
>
> (1) The name and address of the seller of the property to be sold.
>
> (2) A copy of the written or electronic contract authorizing the transaction containing the terms and conditions of the transaction or a copy of the receiving invoice.
>
> (3) A written record of the transaction.

---

[11] The Commonwealth had the burden of proving the violation charged in the Citation. The degree of proof required to establish a case before an administrative tribunal is preponderance of the evidence. *Lansberry v. Pennsylvania Public Utility Commission*, 578 A.2d 600, 602 (Pa. Cmwlth. 1990). A preponderance of the evidence is generally understood to mean that the evidence demonstrates a fact is more likely to be true than not to be true, or if the burden were viewed as a balance scale, the evidence in support of the Commonwealth's case must weigh slightly more than the opposing evidence. *Se-Ling Hosiery, Inc. v. Margulies*, 70 A.2d 854, 856 (Pa. 1950). The Commonwealth therefore has the burden of proving the charges against a respondent with evidence that is substantial and legally credible, not by mere "suspicion" or by only a "scintilla" of evidence. *Lansberry*, 578 A.2d at 602.

**(b) Inspection of records.**-- **The records referred to in subsection (a)** shall be open at all reasonable times for inspection by the [B]oard or any person **who is authorized in writing for that purpose by the [B]oard and who exhibits the written authorization to the licensee or registrant before making an inspection.**

63 P.S. § 734.16(a)-(b) (emphasis added).

It is Petitioner's contention that Investigator Howard failed to demonstrate that he was duly authorized to conduct his investigation because he failed to exhibit written authorization to Petitioner prior to the investigation and that the fruits of that alleged illegality, including statements made on the Reactivation Application, should be suppressed and the matter be vacated and reversed. We find no merit in Petitioner's argument.

Contrary to Petitioner's argument, a plain reading of the actual text of Section 16(b) does not limit who may conduct investigations and applies specifically to an auctioneer's duty to keep records of sales and the inspections of those records. The requirement to obtain written authorization from the Board and to exhibit this written authorization to a licensee before making an inspection applies only where the investigator seeks to obtain the records referenced in Section 16(a), as follows: (1) the name and address of the seller of the property to be sold; (2) a copy of the written or electronic contract authorizing the transaction containing the terms and conditions of the transaction or a copy of the receiving invoice; and (3) a written record of the transaction. There is no evidence in the record that Investigator Howard requested to inspect any of the sales records referenced in Section 16(a) during his investigation. More specifically, his investigation consisted of an interview of Mr. Hostetter, a subsequent review of Petitioner's publicly available website, and the gathering of screenshots of that website. Therefore, Investigator Howard was not required in these

9

circumstances to exhibit written authorization to Petitioner prior to conducting his investigation into Petitioner's violations of the Act.

Petitioner next argues that the issuance of the Citation was defective because the Commonwealth did not demonstrate that Karen Hunter, who issued the Citation, was authorized to do so. Petitioner argues that if Karen Hunter occupied a position pursuant to which she was an authorized agent with authority to issue citations, that information should have been noted on the Citation or introduced into evidence. Petitioner complains that the only evidence provided on that issue, Exhibit C-6, an Order by the Commissioner stating that staff (paralegal supervisors, paralegals, and legal assistants) in the Professional Compliance Office are authorized to issue citations under 63 Pa. C.S. § 3108(a)(1)(iv) (relating to civil penalties), did not show that Karen Hunter occupied any of the positions listed in the Commissioner's Order. In other words, the Commissioner's Order only identified by job title those who are authorized agents. Therefore, according to Petitioner, the Commonwealth failed to prove that Karen Hunter had authority to issue the Citation. Petitioner further argues that pursuant to the Board's regulations found at 49 Pa. Code § 43b.3(a) and (b), only the individual who conducted the investigation (in this case, Investigator Howard) may issue a citation. To reiterate, Section 43b.3 of the regulations, states, in relevant part:

> **(a) Inspections/investigations.** Authorized agents may conduct inspections and investigations for the purpose of ascertaining compliance with statutory provisions and regulations of licensing boards and commissions relating to required licensure and the conduct or operation of a business or facility.
>
> **(b) Citations.**
>
> > (1) If an inspection reveals a violation of a statute or a regulation for which a civil penalty

has been established under the schedules in this chapter, the authorized agent may prepare a citation indicating the violations found and the penalties imposed. A copy of the citation will be provided to the respondent.

49 Pa. Code § 43b.3. An "authorized agent" is defined as "[a]n individual authorized by the Bureau to issue citations in accordance with the [A]ct." 49 Pa. Code § 43b.2. 63 Pa. C.S. § 3108(a)(1)(iv) provides that "[d]uly authorized agents of the [B]ureau shall have the power and authority to issue citations and impose penalties for violations."

Petitioner suggests that the Board's regulations at 49 Pa. Code § 43b.3(a) and (b) must be read together and that this leads to the conclusion that the "authorized agents" referenced in Section 43b.3(b) (*i.e.*, those authorized to issue citations) must be the same "authorized agents" referenced in Section 43b.3(a) (*i.e.*, those authorized to conduct investigations). We find this conclusion can only be reached through an unduly narrow reading of the regulation, and it is inconsistent with 63 Pa. C.S. § 3108(a)(1)(iv), which broadly provides that "[d]uly authorized agents of the [B]ureau shall have the power and authority to issue citations and impose penalties for violations." *See, e.g.*, *Mellott v. Department of Labor and Industry, Bureau of Occupational and Industrial Safety*, 261 A.3d 599, 609 (Pa. Cmwlth. 2021) (administrative regulations "must be consistent with the statute under which they are promulgated").

Section 43b.3(b) of the Board's regulations allows agents who have been "duly authorized" by the Bureau to issue citations. There is no further requirement that the authorized agent be the person who conducted the investigation, and we shall not insert such language where none exists.

11

Next, in response to Petitioner's contention that the Commonwealth failed to prove that Karen Hunter was authorized to issue the Citation, the Pennsylvania Supreme Court has held that "a *prima facie* presumption of the regularity of the acts of public officers exists until the contrary appears." *Hughes v. Chaplin*, 132 A.2d 200, 202 (Pa. 1957). *See also In Re Smith*, 231 A.3d 59, 67 (Pa. Cmwlth.) (2020) ("government actors are presumed to act legally"), *appeal denied*, 242 A.3d 1248 (Pa. 2020). Here, Karen Hunter's issuance of the Citation on a form which, on its face, issued from the Department of State, created a *prima facie* presumption that Karen Hunter was a duly authorized agent with the power and authority to issue a citation. Accordingly, it was Petitioner's obligation, in raising the question of the authority of the individual who issued the Citation, to produce some evidence that it was not issued by a "duly authorized agent." Aside from legal argument, which we have just rejected, Petitioner presented no evidence to suggest that the issuer was not a "duly authorized agent" as contemplated by 63 Pa. C.S. § 3108(a)(1)(iv). Therefore, the presumption remains intact because Petitioner, who challenged it, failed to rebut the presumption. As such, because the Commonwealth demonstrated that Karen Hunter was an agent duly authorized to issue citations, we reject Petitioner's claim.

**2.**

In its next issue, Petitioner argues that the Reactivation Application failed to warn Petitioner that the admission of licensure violations could result in disciplinary action, and possible criminal prosecution, and could be used against it in such "quasi-criminal" proceedings. Petitioner contends that it should have received a "*Miranda*-like" warning that any information provided on the Reactivation Application, or transmitted to Investigator Howard, could be used against it both administratively and criminally. Therefore, Petitioner posits that neither the Reactivation Application nor

12

any information gathered as a result of statements made on the Reactivation Application, being the fruit of the poisonous tree, may be properly used to initiate or prosecute administrative disciplinary proceedings. We find this issue to be without merit.

In recognizing that the principles surrounding *Miranda* warnings are well settled, the Pennsylvania Supreme Court stated as follows: "[t]he prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel. . . . Thus, in criminal cases, *Miranda* warnings are necessary any time a defendant is subject to a custodial interrogation." *Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006) (citation omitted).

Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (quoting *Miranda*, 384 U.S. at 444). An individual is in custody if he is "physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Id.* (quoting *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa. 1999)). Most importantly, the Pennsylvania Supreme Court has held that *Miranda* warnings are not required in investigations which are noncriminal in nature even if the investigation ultimately resulted in criminal prosecution. *See Commonwealth v. Ziegler*, 470 A.2d 56, 58-59 (Pa. 1983); *Commonwealth v. McLaughlin*, 379 A.2d 1056, 1058-59 (Pa. 1977).

Here, Mr. Hostetter's admissions on the Reactivation Application, that he was operating as an auction company on a lapsed license, were not obtained as the

result of custodial interrogation. Mr. Hostetter was not in custody when he filled out Petitioner's Reactivation Application, and he was not subject to an interrogation at the time the statements were made. Therefore, *Miranda* warnings were not necessary. Moreover, contrary to Petitioner's argument, it is irrelevant whether administrative disciplinary proceedings are quasi-criminal in nature because there is no evidence to suggest that Mr. Hostetter was being questioned by law enforcement officers when he submitted the Reactivation Application to the Department. Thus, the question on the Reactivation Application regarding whether Petitioner operated as an auction company while its license was lapsed did not implicate Petitioner's Fifth Amendment right against self-incrimination. Mr. Hostetter's admission on Petitioner's Reactivation Application is not inadmissible on grounds that Mr. Hostetter was not given *Miranda*-like warnings on the Reactivation Application.

**3.**

In its third issue, Petitioner argues that the delegation of the matter to Hearing Examiner Anderson deprived it of the opportunity to have **the Board** decide whether a penalty should be imposed. It contends that Section 20 of the Act affords **the Board** discretion in determining whether to impose discipline on the occasion of a violation of the Act. *See* 63 P.S. § 734.20 ("the [B]oard may refuse, suspend or revoke licenses . . . or impose a civil penalty"). As noted, Mr. Hostetter is a sitting Board member. The appearance of impropriety would have been difficult to avoid had the Board members reviewed the case, especially given that the Board members serve on the Board along with Petitioner's owner. Therefore, all members of the Board appropriately recused themselves, resulting in the unavailability of any Board members to hear the matter. We are unable to conclude that the Board acted inappropriately

14

when it delegated this matter to Hearing Examiner Anderson for a final determination under these circumstances.

Moreover, 63 Pa. C.S. § 3105(a)(2) specifically permits such a delegation, stating that "[e]ach licensing board and licensing commission shall have the power to decide if a specific disciplinary matter or type of disciplinary matter is to be heard by the licensing board or licensing commission itself **or by a hearing examiner appointed under this subsection**." (emphasis added). In turn, 63 Pa. C.S. § 3105(d)(4) of the Act states that "[t]he licensing board or licensing commission shall render a final adjudication or decision on any exceptions to the decision of a hearing examiner or any applications for review within 90 days of the filing of the exceptions or applications, **provided that a board or commission may delegate to a hearing examiner the authority to render a final adjudication or decision in such cases as deemed appropriate.**" (emphasis added). Given that the Board had the express authority to delegate this matter to a hearing examiner for a final determination and had a rational reason for doing so, *i.e.*, one of the Board's members was the owner of the named party in this matter, the Board's delegation of the matter to a hearing examiner was proper. Accordingly, the Board did not commit an error of law in delegating this matter to a hearing examiner.

**4.**

Next, Petitioner claims that because he had paid a "late renewal fee" in addition to a civil penalty for operating on a lapsed license, the $500 civil penalty was a violation of due process and "the practical equivalent to double jeopardy." (Petitioner's Br. at 37.) We disagree.

First, the late renewal fee is authorized by Section 225 of the Bureau of Professional and Occupational Affairs Fee Acts (Fee Act),[12] which provides as follows:

> [w]here a license is renewed beyond the date specified for renewal by the bureau, a fee of $5 for each month or part of a month beyond the renewal date shall be charged in addition to the prescribed fee.

63 P.S. § 1401-225. Here, Petitioner's license lapsed on February 28, 2021, and Petitioner did not file its Reactivation Application until 12 1/2 months later on March 16, 2022. Therefore, as authorized by Section 225 of the Fee Act, Petitioner was charged a late fee of $5.00 for each of the 12 months (March 1, 2021, to March 1, 2022), and $5.00 for part of 1 month (March 1, 2022, to March 16, 2022), for a total late fee of $65.00.

Critically, the civil penalty of $500.00 was imposed, not for the same conduct (late filing), but for operating an auction company with a lapsed license. The late fee was also not disciplinary in nature. A civil penalty for operating on a lapsed license is authorized by 63 Pa. C.S. § 3108(a)(1). The Board's schedule of civil penalties located in the Board's regulations at 49 Pa. Code § 43b.12a sets forth a civil penalty of $500.00 for a first offense of operating an auction company on a lapsed license in this Commonwealth in violation of 63 P.S. §§ 734.3(a)(1), 734.5(e), and 734.20(a)(9). Therefore, the fee and penalty were not imposed for the same conduct. This issue is therefore without merit.

**5.**

Lastly, Petitioner raises challenges to essentially every exhibit admitted into evidence. We find them all to be wholly without merit.

---

[12] Act of July 1, 1978, P.L. 700, *as amended*, 63 P.S. §§ 1401-101 – 1401-501.

Petitioner argues that Hearing Examiner Goldhaber committed an error of law when she admitted Exhibit C-2 into evidence because it constituted inadmissible hearsay. Commonwealth Exhibit C-2 is a certified attestation from the Board's administrator relating to Petitioner's licensure records. Hearing Examiner Goldhaber expressly stated in her order that she did not rely upon Exhibit C-2 as a basis for her order. *See* Order Upholding Citation, April 28, 2023, at 5, n.7 ("Exhibit C-2 was not used in the decision of this case."). Hearing Examiner Anderson also did not rely upon that exhibit as the basis for his order. Therefore, it is unnecessary for us to address whether Exhibit C-2 constituted inadmissible hearsay.

Next, Petitioner argues that Exhibit C-3, the Reactivation Application, was improperly used to prove the truth of the hearsay contained within, *i.e.*, that Petitioner's auction company conducted auctions while its license was lapsed. We disagree.

Pursuant to Pennsylvania Rule of Evidence 803(25), an admission by a party-opponent is an exception to the rule against hearsay, regardless of whether the declarant is available as a witness, if the statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy. Pa.R.E. 803(25).

Because Mr. Hostetter is Petitioner's owner and auctioneer of record, Mr. Hostetter's statement on Petitioner's Reactivation Application qualifies as an admission by a party-opponent, which is an exception to the rule against hearsay. We

17

discern no error in permitting the Commonwealth to use the Reactivation Application to prove its case.

Petitioner also challenges the Hearing Examiner's decision to admit Exhibits C-4 and C-5, the screenshots from Petitioner's auction website, on the grounds that they were not authenticated. Again, we conclude the issue to be without merit.

Pennsylvania Rule of Evidence 901(b)(11) requires that the proponent produce evidence sufficient to support a finding that digital material offered into evidence is what the proponent claims it to be. Specifically, this rule provides that

> **(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> **(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:
>
> ****
>
> **(11) Digital Evidence.** To connect digital evidence with a person or entity:
>
> > (A) direct evidence such as testimony of a person with personal knowledge; or
> >
> > (B) circumstantial evidence such as:
> >
> > > (i) identifying content; or
> > >
> > > (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11).

As set forth in Rule 901(b)(11), digital evidence can be connected with a person or entity by either direct evidence or circumstantial evidence. In this case, there is direct evidence connecting Exhibits C-4 and C-5 to Petitioner. During Investigator Howard's investigation, he received a business card from Mr. Hostetter, who is Petitioner's owner and auctioneer of record. Mr. Hostetter led Investigator Howard directly to Petitioner's website when he gave Investigator Howard his business card. Thus, the direct evidence in this case establishes that Exhibits C-4 and C-5 were properly authenticated.

Finally, Petitioner argues that Exhibit C-6, the Commissioner's Order describing the positions of persons who can issue a citation, was improperly accepted into evidence because there is nothing in the Order that demonstrates that Karen Hunter occupies any of the positions described in the Commissioner's Order. As explained, because the Citation was issued from the Department of State, this created a *prima facie* presumption that Karen Hunter was a duly authorized agent with the power and authority to issue a citation. Petitioner did not rebut that presumption by baldly claiming the contrary. Thus, any objection to the admission of Exhibit C-6 is without merit.

### III.    Conclusion

For all of the foregoing reasons, the January 2, 2024 final adjudication of the State Board of Auctioneer Examiners is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherman Hostetter Group LLC, :
          Petitioner :
        v. : No. 86 C.D. 2024
         :
         :
State Board of Auctioneer Examiners, :
          Respondent :


## ***ORDER***


AND NOW, this 29th day of April, 2025, the January 2, 2024 final adjudication of the State Board of Auctioneer Examiners is hereby AFFIRMED.


_____
PATRICIA A. McCULLOUGH, Judge